# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re: Pinnacle Regional Hospital, LLC,

Debtor.

Case No. 20-20221

## United States Trustee's Amended and Supplemented Objection to Docket No. 114 (Joint Motion to Approve Settlement and Compromise)

At the Court's invitation, the United States Trustee submits this amended objection to the proposed settlement and compromise between the chapter 7 trustee and Great Western Bank. By this amended objection, the United States Trustee asks that the Court deny the proposed settlement for two reasons not previously raised. First, the proposed settlement violates Bankruptcy Code § 726 by proposing to pay $100,000 to the general, unsecured creditors ahead of priority creditors. Second, the proposed settlement is ambiguous, and doesn't clearly or adequately inform the priority creditors that they will not share in the $100,000 carve out.

On December 1, 2021, the United States Trustee's filed its original objection to the joint motion. The objection raised several issues.[1] The Bank and the chapter 7 trustee have said they are prepared to resolve most of those issues, but those issues nevertheless remain outstanding, pending the outcome of the issues raised by this amended objection.[2] Because the issues raised by this amended objection are purely legal issues, which the United States Trustee believes are fatal to the joint motion, the United States Trustee suggests that the Court may rule on the joint motion without the need for a trial.

## Background

At issue now is Paragraph 5 of the settlement agreement, which provides for a liquidation of the major assets of the estate—principally, the hospital building, and land, located in Boonville, Missouri—resulting in a division of the sale proceeds between the bankruptcy estate and the Bank.

---

[1] Docket No. 116.
[2] Also still unresolved are the United States Trustee's objections to paragraph 7 (withdrawal of proofs of claims in related cases) and paragraph 8 (chapter 7 trustee's releases) of the settlement agreement. While the United States Trustee's objection to those two paragraphs remains outstanding, if the Court overrules the issues raised by this amended objection, then the United States Trustee doesn't request a trial on the factual issues raised by paragraphs 7 and 8.

2

According to the settlement motion, the Bank will receive 55% of the net proceeds, subject to a carve-out for the benefit of "unsecured creditors," and the bankruptcy estate will receive 45% of the net proceeds of the assets.

According to paragraph 5.b.i. of the settlement agreement, from the Bank's 55% of the net proceeds, the Bank has agreed to a carve out for distribution to the "allowed unsecured creditor claims," equal to the greater of:

(a) 5% or;

(b) The amount necessary to provide $100,000 available to distribute to "allowed, unsecured creditor claims," provided the total available to distribute to unsecured creditors does not exceed $200,000. If the 5% carve out and the estate's share available for distribution to unsecured creditors exceeds $200,000, the carve out shall be reduced such that the total distribution equals $200,000.

According to paragraph 5.b.ii. of the settlement agreement, the bankruptcy estate will receive 45% of the net proceeds. It goes on to say that the net proceeds will be distributed to certain categories of recipients. And it lists as the fifth category, "to the pro rata distribution to allowed, unsecured claims."

Paragraph 5.b.iii. of the settlement agreement sets forth an illustration of how moneys would be paid out if the Court approves the settlement. Under the illustration, there would be available for "unsecured creditors" a total of $377,224.68. No distinction is made between priority unsecured creditors and general unsecured creditors in the settlement agreement or the joint motion supporting the settlement.

As represented to the Court at the most recent hearing, it is the United States Trustee's understanding that under the Settlement Agreement—from the Bank's 55% share of the net proceeds—there will be a $100,000 carve out to be paid to general, unsecured creditors; while distribution from the estate's 45% share of the net proceeds will be paid under the priorities mandated in Bankruptcy Code § 726.

In other words, the trustee proposes to pay $100,000 to general, unsecured creditors—from a carve out from the Bank's 55% share of the net proceeds—even if other claims of higher priority, including any priority claims, haven't been paid, in full, from the estate's 45% share of the net proceeds.

As things stand, there are two priority claims filed in this case:

1. Claim No. 5, filed by the IRS with a priority, unsecured claim of $1,884,737.57; and

2. Claim No. 35, filed by Boston Scientific with a priority, unsecured claim of $101,999.76.

No party in interest has objected to either claim. Although neither the IRS nor Boston Scientific has objected to the joint motion, it is unclear if those claimants understand fully that if the Court approves the settlement, then they will not receive any of the $100,000.

## Law and Argument

### A. Chapter 7 Trustee May Not Skip Priority Creditors.

Bankruptcy Code § 726 establishes the priorities for paying creditors in a chapter 7 bankruptcy case. Under § 726, priority creditors—like the IRS—must be paid in full before any money may be paid to general, unsecured creditors. According to the chapter 7 trustee, the proposed compromise would allow $100,000 to be paid to general, unsecured creditors, ahead of the priority creditors.

In support of the proposed priority skipping, the chapter 7 trustee has provided the United States Trustee with a 2006 bankruptcy court decision from Delaware.[3] That case is distinguishable as it arose in a chapter 11 case and involved a different factual background.

---

[3] *In re World Health Alternatives, Inc.*, 344 B.R. 291 (Bankr. D. Del. 2006).

In *World Health Alternatives*, a chapter 11 debtor had filed various motions to allow it to sell all its assets, which were subject to a lien. The United States Trustee had appointed an unsecured creditors' committee in the case, and the committee had reserved its right to object to the lien, to the sale, and to the amount of the secured creditor's claim. The committee also had asserted a possible cause of action against the secured creditor. Ultimately, subject to court approval, the committee agreed to drop all its issues in exchange for a carve out from the secured creditor's collateral, to be distributed to the general, unsecured creditors and the committee's professionals. The United States Trustee objected, arguing that the bankruptcy court could not authorize a settlement that pays anything to general, unsecured creditors ahead of priority creditors. The bankruptcy court overruled the UST's objection holding that the committee's withdrawal of its objection to the sale motion constituted substantial consideration given by the committee—not on behalf of the estate or the debtors—in exchange for the carve out.[4]

---

[4] *Id.* at 300.

6

Case 20-20221    Doc# 124    Filed 02/25/22    Page 6 of 13

The bankruptcy court's decision in *World Health* relied on the First Circuit's decision in *SPM Mfg. Corp.*[5] In *SPM*, while the case was in chapter 11, the Official Committee of Unsecured Creditors and the secured lender entered into an agreement to work in concert to resolve the major issues in the case. At the time, the Agreement was not submitted to the Court for approval. The Agreement provided that a portion of the sale proceeds, refinancing, or other disposition of the debtor's assets would be paid to the Committee. When the debtor could not reorganize, a receiver was appointed to sell the assets. Two days after the sale, a previously entered order went into effect granting the Secured Creditor relief from the stay and converting the case to a chapter 7. The parties to the Agreement contended that once the court lifted the automatic stay and ordered those proceeds to be distributed to the Secured Creditor the distributed sale proceeds were no longer estate property; but rather, the property of the Secured Creditor.

On appeal, the First Circuit was asked to rule only on whether the bankruptcy court erred as a matter of law in ordering the Secured

---

[5] *Off. Comm. of Unsec. Creds. v. Stern* (*In re SPM Mfg. Corp.*), 984 F.2d 1305 (1st Cir. 1993)

7
Case 20-20221   Doc# 124   Filed 02/25/22   Page 7 of 13

Creditor to pay to the chapter 7 trustee the amount due to the Committee under the Agreement.

The First Circuit reversed the judgments of the District Court and the Bankruptcy Court and remanded the case to the Bankruptcy Court to determine whether the chapter 7 trustee could pay the funds due to the general, unsecured creditors under the Agreement. Specifically, the First Circuit determined that:

> [S]ection 726 and other Code provisions governing priorities of creditors apply only to distribution of property of the estate. The Code does not govern the rights of creditors to transfer or receive nonestate property. While the debtor and the trustee are not allowed to pay nonpriority creditors ahead of priority creditors, creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including to share them with other creditors.

Neither *World Health* nor *SPM* help the trustee here.

First, the validity of *SPM* is in doubt after the Supreme Court's ruling in *Jevic*.[6] While *Jevic* addressed only priority of payments in the context of a dismissal of a Chapter 11 case, the decision unmistakably

---

[6] *See* Elmer Dean Martin III, *Out of the Money Homesteads, Tax Liens, Carve Outs, Sales, Marshaling, Exemptions and Abandonments: What Can a Chapter 7 Trustee Do with all These?*, 34 Cal. Bankr. J. 185, 190 (2017); and *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973 (2017).

indicates that in general the priorities in Chapter 7 cases must also be observed.[7]

Second, unlike *World Health* and *SPM*, while this case was in chapter 11, there was no agreement between the committee and the Bank. And upon conversion, the chapter 7 trustee became a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured.[8] And as the First Circuit said in *SPM*, "[T]he trustee [is] not allowed to pay nonpriority creditors ahead of priority creditors."[9]

The United States Trustee has found no case allowing a chapter 7 trustee to agree unilaterally to a settlement that sidesteps the distribution scheme provided under § 726. A 2016 case from New York explains why.[10]

The case of *MCO Wash* involved a car wash, which had converted from chapter 11 to chapter 7. The chapter 7 trustee obtained court approval to sell the car wash. After completing the sale, the chapter 7 trustee filed a stipulation with the Court, which was not sent to

---

[7] *Id.*
[8] *In re Bird*, 577 B.R. 365, 375 (10th Cir. BAP 2017).
[9] *SPM*, 984 F.2d at 1313.
[10] *See, e.g., In re MCO Wash, Inc.*, 555 B.R. 159 (Bankr. E.D.N.Y. 2016).

creditors, and which provided for payment of the sale proceeds to the landlord, a secured creditor, and a carve out to pay the chapter 7 administrative expenses and the allowed general unsecured claims.

The chapter 7 trustee later submitted an amended final report, which contained two separate tables of proposed distribution: one distributing the carve out and another distributing the other estate assets. The carve out would have included a pro-rata distribution to general, unsecured creditors. But the amended final report proposed zero distribution to the chapter 11, administrative creditors and the priority, unsecured creditors. The debtor's chapter 11 counsel and the United States Trustee objected to the amended final report.

The bankruptcy court agreed with the United States Trustee's position that a chapter 7 trustee must pay a carve out under the priorities detailed in § 726. The court explained that a carve out from secured collateral administered by a chapter 7 trustee, voluntarily given by a secured creditor whose collateral has been administered by the estate is like a § 506(c) surcharge. And a § 506 recovery is property of the estate acquired post-petition under § 541(a)(7), which is therefore subject to distribution under § 726.

Here, the proposed settlement and compromise would distribute the estate's property in two ways: $100,000 to non-priority, unsecured creditors; and 45% of the net proceeds in accordance with § 726. The proposed distribution would mean that the two priority creditors—the IRS and Boston Scientific—will not receive as large a distribution as they would have if all the bankruptcy estate's funds were distributed pursuant § 726. Because the chapter 7 trustee seeks to distribute estate property, he must follow the distribution scheme set forth by § 726. Thus, the proposed settlement violates the Bankruptcy Code's priority scheme, which the Court should not approve.

## B. Chapter 7 trustee hasn't provided proper notice.

Even if the Court determines that the chapter 7 trustee can pay $100,000 to the general, unsecured creditors—in contravention of his fiduciary duties to the priority creditors—the chapter 7 trustee hasn't provided proper notice to the priority creditors. Neither the joint motion to approve the settlement and compromise nor the Settlement Agreement make clear that there will be $100,000 paid only to general, unsecured creditors. Instead, Paragraph 5.b.i. of the Settlement Agreement provides the carve out will be paid to "allowed unsecured

creditor claims." This language doesn't put the priority creditors on notice that they will not share in the $100,000. Thus, if the Court determines that it can approve the settlement, then it should also require the chapter 7 trustee to provide a clear notice to all creditors, and especially the priority creditors, that the priority scheme will be altered so that priority creditors will not receive any part of the $100,000 carve out.

## Conclusion

The chapter 7 trustee asks the Court to approve a settlement under which the estate will receive $100,000 plus a to-be-determined sum, both from an eventual sale of the Bank's collateral. He proposes to pay the $100,000 to general, unsecured creditors ahead of the priority creditors. The rest he will distribute under § 726, which may mean something may be disbursed to the priority creditors. The Trustee tries to justify this arrangement by citing to inapplicable chapter 11 cases involving carve outs paid, not to the estate, but paid to unsecured creditors' committees. This is a chapter 7; the trustee cites no authority, nor can he, that would permit him to pick and choose who he pays.

Alternatively, if the Court holds that the trustee can ignore the priority scheme in the Bankruptcy Code, then at a minimum, the Court should require the trustee to file an amended motion and new notice to provide clarity to the creditors and parities in interest of the estate, including the priority creditors.

Respectfully submitted,

ILENE J. LASHINSKY
UNITED STATES TRUSTEE

Jordan Sickman
Assistant United States Trustee
Admitted in Michigan, P69823
Appearing under 28 U.S.C. § 515(a)
301 North Main Street, Suite 1150
Wichita KS 67202
Telephone: (316) 269-6176
Facsimile: (316) 269-6182
Email: jordan.sickman@usdoj.gov

**Certificate of Service**

I hereby certify that on February 25, 2022, a true and correct copy of the United States Trustee's Amended Objection to Docket No. 114 (Joint Motion to Approve Settlement and Compromise) was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

By: Jordan Sickman